UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER PARKER,

    Plaintiff,                                          Hon. Janet T. Neff

v.                                                          Case No. 1:12-CV-1399

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and*

*Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 44 years of age on his alleged disability onset date. (Tr. 103). He successfully completed high school and worked previously as an auto mechanic and tree trimmer. (Tr. 14-15).

Plaintiff applied for benefits on April 16, 2009, alleging that he had been disabled since October 13, 2008, due to a back injury. (Tr. 103-08, 141). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 37-102). On August 16, 2011, Plaintiff appeared before ALJ Kathleen Eiler with testimony being offered by Plaintiff and vocational expert, Donald Hecker. (Tr. 22-36). In a written decision dated September 21, 2011, the ALJ determined that Plaintiff was not disabled. (Tr. 9-16). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 1-4). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On October 26, 2008, Plaintiff participated in an MRI examination of his lumbosacral spine the results of which revealed "a small central disc protrusion at L4-S1, which contacts the anterior aspect of the thecal sac and both S1 nerve roots," and "a minimal disc bulge at L4-5." (Tr. 346). On April 9, 2009, Plaintiff participated in a diskogram examination the results of which were "positive" at L5-S1 "with the reproduction of the patient's pain syndrome." (Tr. 341). A CT examination of Plaintiff's lumbar spine, performed the same day, revealed "a small annular tear to

the right at L5-S1 with associated central disc protrusion, without any underlying stenosis" and a "lateral to the right, annular tear at L3-4." (Tr. 340).

On May 19, 2009, Plaintiff underwent spinal decompression and fusion surgery performed by Dr. Scott Russo. (Tr. 308-09). X-rays of Plaintiff's lumbar spine, taken the following day, revealed "no postoperative complications." (Tr. 322). X-rays of Plaintiff's lumbar spine taken June 24, 2009, revealed the following:

> Pedicle screws are in place in L5 and S1 and appear intact. No complication is encountered. A disc prosthesis is in place at L5-S1. The alignment of the vertebral bodies is normal. Sacroiliac joints appear normal.

(Tr. 295).

On June 25, 2009, Plaintiff was examined by Physician's Assistant Aaron Poquette. (Tr. 378). An examination revealed the following:

> Overall I think the patient is doing fairly well. His back pain has changed in character and now is much more of a post surgical type pain. I think overall he is doing fairly well with this. His pain medicines are decreasing. He has no true radicular type of complaints. His walking has significantly improved he tells me since surgery. He continues to use a walker for long distances to help with this stability. Physical examination shows he has good strength in his lower extremities. He has a well healed incision. He is wearing his brace. AP and lateral films of the lumbar spine were done today. This shows good placement of all hardware at L5-S1 and a good start to a bony fusion both posterolaterally and anteriorly. Overall the patient I think is making very good progress. I have given him a prescription for physical therapy to help him with his leg strength. We will follow up with him in approximately 6 weeks from now. At that time we will begin weaning him out of his brace.

(Tr. 378).

4

On September 22, 2009, Plaintiff was examined by Dr. Sean Growney. (Tr. 438-39). Plaintiff reported that his recent back surgery "was helpful for the back pain, however, he has some leg pain remaining." (Tr. 438). An examination revealed the following:

> His shoulder joints are non-tender. His upper extremities show no signs of muscle atrophy, skin discoloration or edema. He has 5/5 grip strength bilaterally. Examination of his thoracolumbar lumbar spine reveals normal curvature and range of motion. His hip joints are non-tender. He has some paravertebral spasm in the erector spinale muscle. Straight-leg-raising reproduces back pain with little radicular pain. He has 5/5 muscle strength in extensor halluses longus, ankle dorsiflexion and plantar flexion, as well as knee flexion and extension bilaterally. He has 2/4 reflexes in the patellar and Achilles tendons bilaterally. He has 2/4 dorsalis pedis and posterior tibial artery pulses. His gait is slightly forward bending and widened.

(Tr. 438-39).

X-rays of Plaintiff's lumbar spine, taken October 15, 2009, revealed "minor degenerative change at the L3-4 disc level with mild anterior spur formation," but "the bones are in good alignment and there is no instability on lateral flexion and extension." (Tr. 437).

On October 29, 2009, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "surgical changes at L5-S1 with mild enhancing scar," but no evidence of misalignment, disc protrusion, or nerve root compression. (Tr. 435-46).

On November 19, 2009, Plaintiff was examined by P.A. Poquette. (Tr. 418). Plaintiff reported that he "continues to have some pretty significant low back pain" as well as "some continued right lower extremity pain." (Tr. 418). An examination revealed the following:

> Physical exam shows that his strength is stable. His incision is well healed. Sensation is fairly normal. Reflexes are intact except for an absent right S1 reflex. He walks with a slightly antalgic gait. MRI of the lumbar spine was available for our review. This shows the previously mentioned L5-S1 fusion. There is some scar tissue around

5

> the right L5-S1 foramen. Overall though there did not seem to be any significant compression on the exiting nerve root at that level. There does seem to be some facet inflamation, most notably at the L4-5 level and the L3-4 levels.

(Tr. 418).

On December 8, 2009, Plaintiff received facet injections at L3-4 and L4-5. (Tr. 464). Treatment notes dated March 2, 2010, indicate that Plaintiff experienced "70% pain relief" following this treatment. (Tr. 466). On three additional occasions between March 2, 2010, and August 10, 2010, Plaintiff received additional facet injections which provided him with "a significant amount of relief." (Tr. 466, 469-71). Treatment notes dated January 18, 2011, indicate that Plaintiff's back pain "seems to be well addressed with lumbar facet injections" which "ha[ve] allowed [Plaintiff] to increase his activity level." (Tr. 472). Specifically Plaintiff reported that "he has taken off 30 pounds and is now exercising regularly. (Tr. 472).

On June 16, 2010, Plaintiff was examined by Dr. Shelley Freimark. (Tr. 559-60). An examination revealed the following:

> Inspection of his lumbar spine shows normal configuration. He has a well-healed scar over the lumbar spine. He does not have any significant tenderness to palpation to the lumbar spinous processes or paraspinal muscles. No muscle spasm or guarding is noted. He has very limited range of motion to both flexion and extension as he complains of significant increase of low back pain with both maneuvers. He has full range of motion of the lower extremities bilaterally. Straight leg raising is negative bilaterally. Patrick's maneuver[1] on the right does reproduce some back pain. All joints

---

[1] FABER (or Patrick) test is "a screening test for pathology of the hip joint or sacrum." *See* Special Tests of the Lower Extremity, available at http://physicaltherapy.about.com/od/orthopedicsandpt/ss/LEspecialtests_2.htm (last visited on January 9, 2014). The test is performed by placing the patient in the supine position and then flexing one leg and placing the foot of that leg on the opposite knee. The tester then slowly presses down on the superior aspect of the tested knee joint lowering the leg into further abduction. The motion performed as part of this test is referred to as FABER - **F**lexion, **AB**duction, **E**xternal **R**otation at the hip. The results are positive if the patient experiences "pain at the hip or sacral joint, or if the leg can not lower to point of being parallel to the opposite leg." *Id.*

> appear symmetric without evidence of erythema, warmth or effusion. There is no crepitus or laxity with movement of the joints. There is no skin breakdown, muscle atrophy or edema in the lower extremities. Peripheral pulses are intact. Strength is 5/5 at the bilateral hip flexors, knee extensors, dorsiflexors, toe extensors. Deep tendon reflexes are 2+ and symmetric at the patella and left Achilles, trace at the right Achilles. Plantar reflexes are downgoing bilaterally.

(Tr. 560).

Taking into account the results of her examination, as well as the results of a previous MRI examination, Dr. Frymark concluded that "it is unclear why he continues [to have] such severe reports of subjective pain." (Tr. 560). Plaintiff also reported that "he is currently unemployed," but "last worked about a month ago." (Tr. 560).

On June 24, 2010, Plaintiff participated in an MRI examination of his lumbar spine the results of which revealed "stable post-operative changes at L5-S1 with some mild right sided enhancing scar," but "no recurrent disc protrusion." (Tr. 440).

On November 12, 2010, Dr. John Cavacece completed a report regarding Plaintiff's physical capacities. (Tr. 447-48). The doctor reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for 1-2 hours each. (Tr. 447). The doctor reported, however, that Plaintiff can "never" lift any amount of weight. (Tr. 447). The doctor also reported that Plaintiff can "never" bend, squat, crawl, kneel, or perform pushing/pulling activities. (Tr. 447).

# ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[2] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining her residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*,

---

[2]1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from degenerative disc disease and post laminectomy syndrome, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 11-12).

The ALJ next determined that Plaintiff retained the capacity to perform sedentary work[3] subject to the following limitations: (1) he can occasionally stoop, kneel, crouch, and climb ramps/stairs; (2) he can frequently balance; and (3) he cannot crawl or climb ladders/ropes/scaffolds. (Tr. 12). The ALJ determined that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can

---

[3] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

9

perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Donald Hecker.

The vocational expert testified that there existed approximately 16,000 jobs in the state of Michigan which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 34-35). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.	**The ALJ Failed to Properly Evaluate the Medical Evidence**

As noted above, Dr. Cavacece offered an opinion regarding Plaintiff's ability to perform work activities. While the ALJ's RFC recognizes that Plaintiff suffers from significant physical limitations, Dr. Cavacece opined that Plaintiff is even more severely limited. Specifically, the doctor reported that during an 8-hour workday, Plaintiff can sit, stand, and walk for only 1-2 hours each. The doctor also reported that Plaintiff can "never" lift any amount of weight. The doctor further reported that Plaintiff can "never" bend, squat, crawl, kneel, or perform pushing/pulling activities. The ALJ afforded "limited weight" to Dr. Cavacece's opinion. Plaintiff argues that the ALJ failed to articulate sufficient reasons for discounting Dr. Cavacece's opinion.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by

medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to her assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

In discounting Dr. Cavacece's opinions, the ALJ simply stated that he "affords it limited weight because it is not supported by the objective medical evidence which revealed no significant abnormalities." (Tr. 14). This conclusory statement is the only examination or analysis the ALJ articulated concerning the substance of Dr. Cavacece's opinions. As the Sixth Circuit has made clear, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson*, 378 F.3d at 544-47. As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the

> claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The ALJ has failed to provide *specific* reasons for her assessment of the doctor's opinions, but instead merely offers the conclusion that the doctor's opinion is not supported by the record. Because the ALJ failed to articulate any specific rationale or, more importantly, identify any specific items in the record to support her conclusion, the Court simply cannot assess whether the ALJ's determination in this regard is supported by substantial evidence. While Defendant has undertaken in her brief a discussion of *specific* items in the medical record and how such support the ALJ's assessment of Dr. Cavacece's opinions, such simply underscores the shortcomings in the ALJ's decision. The Court cannot find that the ALJ's conclusion is legally sufficient based upon after-the-fact rationalizations articulated by Defendant. Instead, as *Wilson* makes clear, the task of

articulating the rationale for discounting a treating physician's opinion rests with the ALJ. In light of the fact that Dr. Cavacece's opinion is inconsistent with the ALJ's RFC determination, the ALJ's failure is not harmless. The ALJ's failure clearly violates the principle articulated in *Wilson* and renders her decision invalid.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling). While the ALJ's decision is not supported by substantial evidence, there does not exist *compelling* evidence that Plaintiff is disabled. Evaluation of Plaintiff's claim requires the resolution of factual disputes which this Court is neither authorized nor competent to undertake in the first instance. The undersigned recommends, therefore, that the Commissioner's be reversed and this matter remanded for further factual findings.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g)**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: January 27, 2014

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge